```
GONZALEZ & LEIGH, LLP
MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
BRYAN W. VERESCHAGIN (SBN 188608)
Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorneys for Plaintiff
SHERETTA HENDERSON
```

FILED
2008 FEB 29  11: 12
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA.

ADR
E-FILING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERETTA HENDERSON, an individual<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN JOSE; ROBERT DAVIS in his capacity as CHIEF OF POLICE OF THE CITY OF SAN JOSE; OFFICER CHRISTIAN CAMARILLO; OFFICER RAFAEL VARELA; and DOES 1 THROUGH 75, individually and in their official capacities as employees of the CITY OF SAN JOSE; and DOES 76-100 individually, inclusive,<br><br>Defendants. | CASE NO. C08 01214<br><br>COMPLAINT<br><br>1. Violation of 42 U.S.C. §1983 – Excessive Force<br>2. 42 U.S.C. §1983 Monell Liability<br><br>REQUEST FOR PUNITIVE DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff hereby alleges as follows:

### I.   JURISDICTION AND VENUE

1. This is a civil suit brought under the Federal Civil Rights Act, 42 U.S.C.§1983 for violations of plaintiff's rights as secured under the United States Constitution. This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331.

2.   This suit further seeks the imposition of punitive damages against all appropriate defendants as permitted under law.

3.   Venue is proper in this Court because the facts supporting each of these causes of action arise out of conduct undertaken by defendants in San Jose, California.

4.   Intra-district assignment is appropriate in the San Jose Division of the Northern District because all of the events occurred within the City of San Jose in Santa Clara County, California.

## II.   PARTIES

5.   Plaintiff Sherretta Henderson was, at the time of the incident that forms the basis of this lawsuit, a student at San Jose State University.

6.   Defendant the City of San Jose is a municipality duly organized and existing under the laws of the State of California. The City of San Jose is located in the County of Santa Clara, California. The City of San Jose operates under its authority the San Jose Police Department.

7.   Defendant Robert Davis is the Chief of Police for the City of San Jose. During the times material to this complaint, Chief Davis was a policy-making official for the City of San Jose's Police Department. Chief Davis is being sued in his official capacity as the Chief of Police for the City of San Jose.

8.   Defendant Christian Camarillo is an officer with the San Jose Police Department and was a member of Metro Team 6 under the command of Sergeant Abruzzini on the night of the "Mardi Gras" celebration in downtown San Jose, February 28, 2006 and into March 1, 2006.

9.   Defendant Rafael Varela is an officer with the San Jose Police Department and was a member of Metro Team 6 under the command of Sergeant Abruzzini on the night of the "Mardi Gras" celebration in downtown San Jose, February 28, 2006 and into March 1, 2006.

10.   DOES 1 through 50 are employees of the City of San Jose and work for the city in their respective capacities as officers of the San Jose Police Department. DOES 1 through 50 are involved in the incidents giving rise to this lawsuit. DOES 1 through 50 are being sued

1 individually and in their official capacities as police officers and employees of the City of San Jose. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES 1 through 50 are in some manner responsible for the acts and injuries alleged herein. Plaintiff is ignorant of the true names and capacities of defendants DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend her complaint to state the names and capacities of DOES 1 through 50 when they have been ascertained.

11. DOES 51 through 75 are high ranking officials and/or policy makers of the San Jose Police Department who are employed by the City of San Jose, and who are involved in the incidents giving rise to this lawsuit. DOES 51 through 75 are being sued in their official capacities. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES 51 through 75 are in some manner responsible for the acts and injuries alleged herein. Plaintiff is ignorant of the true names and capacities of defendants DOES 51 through 75, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend her complaint to state the names and capacities of DOES 51 through 75 when they have been ascertained.

12. Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES 76 through 100 are in some manner responsible for the acts and injuries alleged herein. Plaintiff is ignorant of the true names and capacities of defendants DOES 76 through 100, and therefore sues these defendants by such fictitious names. Plaintiff will amend her complaint to state the names and capacities of DOES 76 through 100 when they have been ascertained.

13. In engaging in the conduct described herein, defendants acted under color of law and in the course and scope of their employment with the City of San Jose. In engaging in the conduct described herein, defendants exceeded the authority vested in them as government employees, police officers, policy makers and officials under the United States Constitution.

### III. STATEMENT OF FACTS

14. On the evening of February 28, 2006, Metro Team 6, a special operations unit within the San Jose Police Department ("SJPD"), was assigned to an area of San Jose. The area was designated by the SJPD as "Zone 2," one of four areas designated for police coverage by the SJPD that night. "Zone 2" was bordered by W. Julian to the North, Market Street to the West, Fourth Street to the East, and San Fernando Street to the South.

15. Metro Team 6 was commanded by Sergeant Abruzzini and included Defendants Camarillo, Nunes, and Varela.

16. Shortly before midnight on February 28, 2006, Metro Team 6 was deployed to "Zone 4" to assist with "crowd control."

17. "Zone 4" encompassed the area in and around City Hall, bordered by Fourth Street to the West, Fifth Street to the East, East Santa Clara Street to the North, and East San Fernando Street to the South.

18. Metro Team 6 arrived in "Zone 4" around midnight and congregated just North of East Santa Clara near the area where Fifth Street intersects with East Santa Clara, between the main tower of City Hall and the rotunda on the interior of City Hall property.

19. Around the same time Ms. Sanchez and a group of 3-4 friends were walking along East Santa Clara Street, near the corner of Fifth Street, attempting to make their way back to their residences on the campus of San Jose State University.

20. Previous to arriving at the area near the corner of 5th Street and E. Santa Clara, the females had stopped at a burrito shop on Santa Clara Street between Second and Third Streets. After leaving the burrito shop, the females, including Ms. Sanchez, proceeded to walk East on Santa Clara Street in order to return to campus.

21. Ms. Henderson had not consumed any alcohol, or taken any illegal drugs that night, and was completely sober.

22. The group, however, was prevented from walking eastbound on Santa Clara by officers who were directing people North towards Saint John. The group followed the directives of the officers and proceeded to walk North on either Third or Fourth Street towards St. John.

23. Reaching Fifth and St. John, and by this time generally removing themselves from the crowd, the females, including Ms. Henderson, attempted, once again, to return back to their residences on campus.

24. Upon arriving at Fifth and Santa Clara Street, one of the group, Kimberly Larry, was harassed by an unknown officer an horseback, who intentionally and repeatedly used her horse's muzzle to push Ms. Larry's person - this despite the fact that Ms. Larry was, all the time, following police orders to walk down 5th Street towards City Hall

25. Upset by the harassment she received at the hands of an unknown San Jose police, Ms. Larry walked ahead of the group, South towards some of the members of RDT 8 standing along East Santa Clara street to complain about the treatment she received from the officer on horseback and to ask for the badge number of the same officer. The police officers told her simply to "keep walking."

26. Following the orders of the officer, Ms. Larry proceeded to take a path through City Hall property towards San Fernando Street which led directly back to the campus of San Jose State. At no time did any officer attempt to stop Ms. Larry from walking in that direction.

27. The harassment of Ms. Larry and her subsequent attempt to obtain the badge number of the officer on horseback, was the first time that any of the females had personally interacted, or spoken with any San Jose Police officers that night.

28. While Ms. Larry was talking the officers, the rest of the group including Ms. Henderson, Natasha Burton, and Christian Sanchez, remained behind Ms. Larry, close to the sidewalk. However, at some point shortly after Ms. Larry walked ahead of the group to return home, the females were told by an unknown officer to "go get your friend [Ms. Larry], she can't walk that way."

29. At that point, following the request of the officer, the group of females, including Ms. Henderson, moved towards Ms. Larry and called out to her in an attempt to retrieve her friend and direct her to walk around City Hall, instead of cutting through City Hall property which led back to campus. Ms. Henderson followed the orders of the San Jose Police Department officers to move away from City hall east towards Sixth Street

30. While plaintiff was following police orders by moving east, away from City Hall along Santa Clara, Officer Camarillo used his baton to brutally strike Ms, Henderson in lower leg.

31. At this point Ms. Henderson put both of her hands up in a defensive position to protect herself from any further strikes, and the continued to walk east away from the police officers. While walking away she asked for the name and badge number of Officer Camarillo.

32. In violation of clearly delineated police policy and procedure, Officer Camarillo refused to provide his name and badge number to Ms. Henderson.

33. Despite her clear attempt to remove herself from the situation, at this point running away, she was again struck in the back by Officer Varela, who raised his baton over his head, increased his speed and, again brutally, struck Ms. Henderson in a downward motion.

34. Both baton strikes were captured on video by a KPIX news team across the street from City Hall.

35. The first strike by Officer Camarillo caused Ms. Henderson intense pain on her lower leg, and resulted in a severe bruise. The second strike landed in her lower back and also caused severe pain. Both injuries were treated at San Jose State University Student Health Center.

36. At no point, either before or after she was brutally assaulted by Officers Camarillo and Varela, did Ms. Henderson disobey police orders to move away from the area. In fact, at the time of both strikes she was moving East along Santa Clara away from the City Hall area as she was instructed by the police. Again, at the time of the second strike she is shown on video clearly running away from the area.

6
COMPLAINT

37. Ms. Henderson filed a formal complaint to the San Jose Police Department and provided them with a statement to the Police Department regarding her mistreatment by the Officers. However, despite the clear use of excessive force, as captured on video, the San Jose Police Department has taken no known action with regard to the excessive force used against Ms. Henderson that night.

## IV. CLAIMS

### FIRST CAUSE OF ACTION

**(42 U.S.C. § 1983 –Unlawful Seizure, Excessive Force, Denial of Medical Care)**

**(Against Defendants Camarillo and Varela)**

38. Plaintiff incorporates the allegations set forth in paragraphs 1-37 as though fully set forth herein.

39. Defendants hit plaintiff with a baton, caused deep bruises to her lower leg and back, through the unlawful use of excessive force against plaintiff. In the process, defendants violated plaintiff's constitutional right to be free from unlawful detentions, seizures and excessive force as secured by the Fourth and Fourteenth Amendments.

40. After unlawfully battering her, defendants denied plaintiff medical care, and in the process violated plaintiff's constitutional rights.

41. Defendants acted under color of state law and within the course and scope of their employment with the City of San Jose and the San Jose Police Department when unlawfully deploying excessive force against plaintiff for no reason, and when improperly denying plaintiff needed medical care.

42. Defendants' actions directly and proximately caused injury to plaintiff.

43. As a result of defendants' actions, plaintiff has suffered damages, in an amount to be determined at trial.

44. Defendants' actions were taken in knowing violation of plaintiff's legal and constitutional rights, and without good faith. Punitive damages against the involved City of San Jose police officers are thus warranted.

1  Wherefore, plaintiff prays for relief against defendants as set forth hereafter.

## SECOND CAUSE OF ACTION

### (Monell Liability 42 U.S.C. 1983)

### (AGAINST CITY OF SAN JOSE, ROBERT DAVIS AND DOES 51-75)

45.  Plaintiff incorporates the allegations contained in the above paragraphs 1 through 44 as though set forth fully herein.

46.  Plaintiff is informed and believes, and thereon alleges, that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis and DOES 51-75, and each of them, knew and/or reasonably should have known, about repeated acts of misconduct by Defendants, including acts of excessive force, denial of medical care and treatment and racial bias.

47.  Plaintiff is further informed and believes that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, knew and/or reasonably should have known, that Defendants were improperly trained to perform their duties as police officers.

48.  Despite having such notice, plaintiff is informed and believes, and thereon alleges that high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis, and each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by the involved police officers.

49.  Plaintiff is informed and believes, and thereon alleges, that as a result of the deliberate indifference, recklessness and/or conscious disregard of the misconduct by, and the lack of training or unreasonable training, high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis and DOES 51-75, and each of them, defendants approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Defendants, which resulted in violations of plaintiff's constitutional rights.

50. Defendants City of San Jose, Chief of Police Robert Davis and DOES 51-75 owed plaintiff a duty of care to ensure that it hired, trained, and supervised its officers so as to prevent violations of her constitutional, statutory, and common law rights.

51. The aforementioned acts and/or omissions and/or deliberate indifference by the City of San Jose, high ranking City of San Jose officials, including high ranking police supervisors such as Chief of Police Robert Davis and DOES 51-75, and each of them, resulted in deprivation of plaintiff's constitutional rights.

Wherefore, plaintiff prays for relief against defendants as set forth hereafter.

## V. REQUEST FOR PUNITIVE DAMAGES

52. Plaintiff incorporates the allegations contained in the above paragraphs 1 through 51 as though fully set forth herein.

53. The above-described conduct of the individual police officers, sued herein as Defendants, was extreme and outrageous, done intentionally and with conscious disregard of plaintiff's rights. Plaintiff requests the imposition of punitive damages against all responsible defendants to deter further unlawful conduct in the future.

## VI. RELIEF REQUESTED

Wherefore, plaintiff respectfully request that this Court grant the following relief:

1. For compensatory damages according to proof against all defendants;
2. For special damages according to proof against all defendants;
3. Injunctive Relief to mandate supplemental officer training and investigation on the appropriate use of force, provision of medical care and proper processing of citizen complaints against San Jose Police officers.
4. Punitive damages against individual defendants in an amount to be proven at trial pursuant to 42 U.S.C. §1983;
5. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;
6. Costs incurred in this matter;
7. Prejudgment interest at the maximum legal rate; and

8. The cost of suit and any such other relief as the Court finds just and proper.

Dated: February 28, 2008

GONZALEZ & LEIGH, LLP

By _____
BRYAN W. VERESCHAGIN
Attorneys for Plaintiff
SHERETTA HENDERSON

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand trial by jury of their claims raised herein.

Dated: February 28, 2008

GONZALEZ & LEIGH, LLP

By _____
BRYAN W. VERESCHAGIN
Attorneys for Plaintiff
SHERETTA HENDERSON